[Civ. No. 6453. Second Appellate District, Division Two.—February 4, 1931.]

VIOLET REID WILDEY, Appellant, v. EVERETT H. SEAVER, Respondent.

Gibson, Dunn & Crutcher and Norman S. Sterry for Respondent.

Chapman & Chapman and John S. Frazer for Appellant.

ARCHBALD, J., *pro tem.*—This is an appeal from a judgment in favor of defendant and against the plaintiff.

Plaintiff brought the action for damages alleged to have been sustained by her due to certain alleged fraudulent representations of the defendant in the exchange of lot 27, tract 3357, referred to at the trial as the Seaver lot, which lot and other real estate and cash were exchanged for certain property belonging to plaintiff. It was alleged in the complaint and found by the trial court that at the time of the exchange and prior thereto the defendant represented to the plaintiff, that said lot contained an area of three acres, by erecting and maintaining on said lot two signs which stated, ''This beautiful 3 acres for sale'' and ''For sale this beautiful 3 acres'', respectively, and otherwise representing to plaintiff that the area of said lot was three acres with a variation of 1/16 more or less. The court also found that said representations were not true and that the area of said lot was not in excess of 2.379 acres; that said representations were believed by the defendant and his agent to be true but were made in a manner not warranted or justified by their information, and that they were not made for the purpose of inducing plaintiff to enter into said agreement of exchange. The trial court further found that plaintiff was not damaged by said representations; that she did not rely on them in making the exchange; that she did not accept said lot on a basis of $25,000 per acre, and that said lot would not have been worth any more if it had contained three acres instead of 2.379 acres. The plaintiff attacks these latter findings as being wholly unsupported by the evidence.

The evidence shows without contradiction that the exterior boundaries of the lot were in the shape of an irregular horseshoe, and with the exception of the boundary across the heel, the lot was surrounded by Cove Way and Summit Drive, a hedge clearly marking its exterior boundary, from which the lot arose rather abruptly on all sides to a summit, the building site being on the highest point, with a possible second site on a lower knoll of the summit. The property was restricted to use for residence purposes only and the topography would seem to further restrict it to two, or three such sites at the most. It also appears from the evidence that the area of 2.379 acres was inside the boundaries

outlined by the hedge, although the regular lines extending to the middle of the surrounding streets embraced about 2.69 acres. In the deal the plaintiff was exchanging a property known as the Reid studio apartment building for the Seaver lot, a store building in Alhambra, and $20,000 cash. In testifying about a conversation with defendant about the area of the lot the plaintiff said, "He just said there were three acres"; "I don't remember that he said more or less." "Mr. Norton told me there was a possibility of its being a fraction more or less." She further said, "Always he (Mr. Norton) and Mr. Merwin both represented it to me as three acres, at $25,000 an acre, and the conversation going out to the piece was always a 3 acre piece, worth $25,000 an acre; that it was a good buy for me." She further testified that she would not have made the deal if she had known that there were not more than 2.69 acres in the piece. The plaintiff testified in regard to the properties she was offered: "I told Mr. Norton and Mr. Merwin that I liked the Beverly acreage very much and I really thought I could get my price out of it. I was a little doubtful about the Alhambra stores, . . . I thought I would have to take a loss on them. This was before I entered into the deal. That I would check up the Beverly acreage with Mr. Meline . . . and if he said the Beverly Hills acreage was worth $25,000 an acre I would take the deal, because I was reasonably certain that on the Alhambra stores I would have to take a loss, and was willing to take a ten or fifteen thousand dollar loss on the deal and that was all". She further testified "If anyone had offered me $25,000 an acre, less 1/16, I would have been glad to take it". At the time referred to plaintiff did not know the exact shortage, but did know that there was a possibility that it was 1/16 of an acre short and she was being interrogated about that. So the court could very well have concluded from the testimony of the plaintiff herself that she was only interested in having the Seaver lot stand up to a value of approximately $75,000, regardless of its content and that the $25,000 per acre was all a matter of mathematical calculation based on such value and the supposed content of three acres or a little less. Mr. Norton who represented the defendant Seaver in the deal, testified: "To the best of my remembrance in submitting this property to Mrs. Wildey I submitted it in the nature of a site rather than acreage.

She asked the value of it and then analyzed its value from the point of acreage.'' As to the value of the property at the time, Mr. Rose (a witness for defendant) testified that the value of the lot at the time was from $75,000 to $80,000. He also said that in the sale of such a property the three main elements that gave it value were the contour of the land, the elevation ''from the view point of whether we get an ocean view or a mountain view'', and the area contained in it, and also that in this particular property even if the boundaries could be extended so as to make the area three acres that it would not increase either value or the salability of the lot because of the contour of the ground. Other witnesses testified to the same thing. Dr. Edwin Janss fixed the value at the time as $80,000. We have not attempted to quote all the conflicting evidence or all of the evidence which supports the conclusions reached by the trial court, but have quoted sufficient to show not only that there is a conflict in the evidence, but also that there is evidence to support the findings complained of by appellant and to show that even from the testimony of plaintiff herself the court could draw an adverse inference on the question of whether she relied upon the representations complained of in making the exchange or whether or not she accepted the lot on a basis of $25,000 per acre, or as a site of the value of $75,000. The court having come to this latter conclusion and there being evidence to support such value his finding that there was no damage would seem to be supported, and of course misrepresentations without damage do not support a cause of action. (*Gaffney* v. *Graf,* 73 Cal. App. 622 [238 Pac. 1054].) Where findings are based on conflicting evidence such as we find here they are conclusive on the appellate court, and where two or more inferences can be made from the same evidence the one drawn by the trial court must stand on appeal. (*Wilbur* v. *Wilbur,* 197 Cal. 1 [239 Pac. 332].)

Judgment affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.